9:24-cv-1314 (FJS/TWD)

SUPREME COURT OF THE STATE OF NEW YORK
 COUNTY OF CLINTON
-----------------------------------------------------------------------------X
LANCE BISHOP,

                                 Plaintiff,

      -against-

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, NEW YORK STATE OFFICE OF
MENTAL HEALTH, ANTHONY J. ANNUCCI, ACTING
COMMISSIONER, ANN MARIE T. SULLIVAN, CLINTON
CORRECTIONAL FACILITY, SUPERINTENDENT MCINTOSH,
CORRECTION OFFICER TONY E. ROCK, CORRECTION
OFFICER CHAD D. LABOMBARD, DEPUTY
SUPERINTENDENT DENNIS W. BRADFORD, CORRECTION
OFFICER WILLIAM F. NELSON, CORRECTION OFFICER
MICHAEL J. CORYER, CORRECTION OFFICER EVAN J.
HOLLAND, NURSE CATHLEEN A. REUSSER, NURSE PAT
MANOR, CORRECTION OFFICER ZACHARY R. BABBIE,
SERGEANT ERIC M. FESSETTE, DR. RICHARD J. DAMICO and
CORRECTION OFFICERS JANE/JOHN DOES 1-5 (the names
"Jane/John Doe" being fictitious as the true names are presently
unknown),

                                 Defendants.
-----------------------------------------------------------------------------X

**SUMMONS**

Index No.:

The basis of venue is:
Clinton Correctional Facility

Plaintiff designates Clinton
County as the place of trial.

To the above named Defendants:

      You are hereby summoned to answer the complaint in this action, and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of appearance
on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the
day of service, where service is made by delivery upon you personally within the state, or, within
30 days after completion of service where service is made in any other manner.  In case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
in the complaint.

DATED: July 9, 2024
      New York, New York

                         Yours, etc.,

Ellie Silverman, Esq.
Ellie Silverman Law P.C.
*Attorneys for Plaintiff*
745 5th Avenue, Suite 500
New York, NY 10151

TO:    NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY
       SUPERVISION
       *Via Secretary of State - Public Corporation's Agent*
       c/o Attorney General's Office
       28 Liberty Street
       New York, NY 10005

       The Harriman State Campus Building-2
       1220 Washington Avenue
       Albany, New York 12226-2050

       ANTHONY ANNUCCI
       *Via Secretary of State - Public Corporation's Agent*
       c/o Attorney General's Office
       28 Liberty Street
       New York, NY 10005

       The Harriman State Campus Building-2
       1220 Washington Avenue
       Albany, New York 12226-2050

       CLINTON CORRECTIONAL FACILITY
       1156 Cook Street
       Dannemora, NY 12929

       NEW YORK STATE OFFICE OF MENTAL HEALTH
       44 Holland Avenue
       Albany, New York 12229

       ANN MARIE T. SULLIVAN
       44 Holland Avenue
       Albany, New York 12229

       SUPERINTENDENT MCINTOSH
       1156 Cook Street
       Dannemora, NY 12929

CORRECTION OFFICER TONY E. ROCK
1156 Cook Street
Dannemora, NY 12929

CORRECTION OFFICER CHAD D. LABOMBARD
1156 Cook Street
Dannemora, NY 12929

CORRECTION OFFICER WILLIAM F. NELSON
1156 Cook Street
Dannemora, NY 12929

CORRECTION OFFICER ZACHARY R. BABBIE
1156 Cook Street
Dannemora, NY 12929

CORRECTION OFFICER MICHAEL J. CORYER
1156 Cook Street
Dannemora, NY 12929

CORRECTION OFFICER EVAN J. HOLLAND
1156 Cook Street
Dannemora, NY 12929

NURSE CATHLEEN A. REUSSER
1156 Cook Street
Dannemora, NY 12929

NURSE PAT MANOR
1156 Cook Street
Dannemora, NY 12929

SERGEANT ERIC M. FESSETTE
1156 Cook Street
Dannemora, NY 12929

DEPUTY SUPERINTENDENT DENNIS W. BRADFORD
1156 Cook Street
Dannemora, NY 12929

DR. RICHARD J. DAMICO
1156 Cook Street
Dannemora, NY 12929

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF CLINTON
---------------------------------------------------------------------------x

LANCE BISHOP,                                              VERIFIED COMPLAINT

                                                          Index No.:

                            Plaintiff,

                  -against-

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, NEW YORK STATE OFFICE
OF MENTAL HEALTH, ANTHONY J. ANNUCCI, ACTING
COMMISSIONER, ANN MARIE T. SULLIVAN, CLINTON
CORRECTIONAL        FACILITY,        SUPERINTENDENT
MCINTOSH, CORRECTION OFFICER TONY E. ROCK,
CORRECTION OFFICER CHAD D. LABOMBARD, DEPUTY
SUPERINTENDENT DENNIS W. BRADFORD, CORRECTION
OFFICER WILLIAM F. NELSON, CORRECTION OFFICER
MICHAEL J. CORYER, CORRECTION OFFICER EVAN J.
HOLLAND, NURSE CATHLEEN A. REUSSER, NURSE PAT
MANOR, CORRECTION OFFICER ZACHARY R. BABBIE,
SERGEANT ERIC M. FESSETTE, DR. RICHARD J. DAMICO
and CORRECTION OFFICERS JANE/JOHN DOES 1-5 (the
names "Jane/John Doe" being fictitious as the true names are
presently unknown),

                            Defendants.

---------------------------------------------------------------------------x

        Plaintiff, LANCE BISHOP, by his attorneys, Ellie Silverman Law P.C. as and for his
Verified Complaint herein, alleges upon information and belief as follows:

                            PRELIMINARY STATEMENT

        1.      This is a civil rights action to recover money damages arising out of Defendants'
violation of Plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. Sections 1983 and
1988, and of rights secured by the Eighth and Fourteenth Amendments to the United States
Constitution, and the common law and the laws of the State of New York.  On July 9, 2021,
Plaintiff LANCE BISHOP, while an incarcerated individual at the CLINTON CORRECTIONAL
FACILITY ("CLINTON" or "Jail" or "Prison") located at 1156 Cook St, Dannemora, New York,
was assaulted by staff employed by the Department. As a result of the Defendants' negligent,
intentional and reckless disregard of Plaintiff's safety, he was subjected to a violent and brutal
physical attack. As a result of the defendants' negligence, recklessness, and/or indifference,

Plaintiff suffered severe and permanent physical injuries, including but not limited to, brain injury and hair loss, as well as excruciating pain and other physical injuries. This brutal assault is yet another example of the endemic violence and excessive force that has plagued correctional facilities in New York for decades—violence that officials have failed to remediate, despite widespread knowledge of these problems.

<u>PARTIES</u>

2.      At all times herein relevant, Plaintiff LANCE BISHOP is a resident of the State of New York.

3.      At all times relevant herein, Plaintiff was an incarcerated individual at CLINTON CORRECTIONAL FACILITY, located in Dannemora, County of Clinton, State of New York.

4.      At all times relevant hereto, the Defendant, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("the Department" or "DOCCS"), was a municipal corporation created, organized and/or existing by virtue of the laws of the State of New York, with a principal place of business in the County of Clinton, New York.

5.      At all times relevant hereto, the Defendant ANTHONY ANNUCCI was the Acting Commissioner of DOCCS and was a policymaker and supervisor for all DOCCS employees. ANNUCCI acted under color of law and in his capacity as an employee/agent of the State of New York and is thus responsible for its administration and operation, including its compliance with New York state law (Correction Law §§ 5, 201).

6.      At all times relevant hereto, the Defendant Superintendent MCINTOSH was the Superintendent of CLINTON.  As such, she was the policy maker and supervisor for the DOCCS facility.  She acted under the color of law in his capacity as an employee/agent of the State of New York.

7.      At all times relevant hereto, Defendant OFFICE OF MENTAL HEALTH enforces the laws and regulations that govern the provision of mental health treatment in the DOCCS system and is responsible for developing, implementing, and overseeing the provision of mental health treatment and mental health diagnoses in DOCCS custody. Defendant OMH is statutorily responsible for "seeing that mentally ill persons are provided with care and treatment, that such care, treatment and rehabilitation is of high quality and effectiveness, and that the personal and civil rights of persons receiving care, treatment and rehabilitation are adequately protected" (Mental Hygiene Law § 7.07 [c]).

8.      At all times relevant hereto, Defendant ANN MARIE T. SULLIVAN is the Commissioner of OMH and is thus responsible for its administration and operation, including its compliance with New York state law (Mental Hygiene Law § 41.44; Correction Law § 401).

9.      At all times relevant hereto, the Defendant, CLINTON CORRECTIONAL FACILITY, was a municipal corporation, public agency and/or division of the New York State Department of Corrections and Community Supervision, created, organized and/or existing by

virtue of the laws of the State of New York, with a principal place of business in the County of Clinton, New York.

10.    At all times herein relevant, CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER CHAD D. LABOMBARD, DEPUTY SUPERINTENDENT DENNIS W. BRADFORD, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER MICHAEL J. CORYER, CORRECTION OFFICER ZACHARY R. BABBIE, CORRECTION OFFICER EVAN J. HOLLAND, SERGEANT ERIC M. FESSETTE, NURSE CATHLEEN A. REUSSER, NURSE PAT MANOR, DR. RICHARD J. DAMICO and CORRECTION OFFICERS JANE/JOHN DOES 1-5 were and are officers, employees, sub-contractors and agents of DOCCS.

11.    The Department's Correction Officers at all times herein relevant were required to provide adequate security, supervision, safety and care of all incarcerated individuals housed in the CLINTON CORRECTIONAL FACILITY.  These responsibilities included but were not limited to:

    a.  Making rounds and supervising the movement and activities of incarcerated individuals by maintaining jail security at an assigned post or cell or tier;
    b.  Watching for unusual incidents or activities on the part of incarcerated individuals involving violation of facility rules and reporting these incidents;
    c.  Taking direct action to break up fight or disturbances between incarcerated individuals; and
    d.  Escorting and maintaining watch over incarcerated individuals during all movement.

12.    Upon information and belief, at all times relevant hereto, officials, officers, agents, servants, employees, contractors, and/or sub-contractors of the defendant, CLINTON CORRECTIONAL FACILITY, including but not limited to, the individually named Correction Officers and the John Does Correction Officers, assumed and maintained responsibility, supervision, control, and/or authority over the operation and/or management of CLINTON CORRECTIONAL FACILITY.

13.    The individually named Correction Officer Defendants and Does Defendants were and are at all times relevant herein Correction Officers assigned to CLINTON CORRECTIONAL FACILITY.

14.    All defendants are being sued in their individual and official capacities.

15.    Defendants' actions violate Correction Law § 137.

16.    At all times relevant herein, the individually named Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of DOCCS, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.  They were acting for and on behalf of CLINTON CORRECTIONAL FACILITY at all times relevant herein, with

the power and authority vested in them as officers, agents and employees of CLINTON CORRECTIONAL FACILITY and incidental to the lawful pursuit of their duties as officers, employees and agents of CLINTON CORRECTIONAL FACILITY.

17.    Upon information and belief, at all times relevant hereto, the Defendants are liable to the Plaintiff for the acts complained of herein under the theories of vicarious liability and *respondeat superior*.

18.    This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the Defendant, and/or Defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

19.    Plaintiff has sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

20.    At all times hereinafter mentioned, Defendants were acting in concert with each other when they were supervising incarcerated individuals and responsible for the care, custody and safety of the incarcerated individuals including Mr. Bishop.

<u>STATEMENT OF FACTS</u>

21.    At the time of the relevant incident, Plaintiff was an incarcerated individual housed in Upper F Block, 5-7 cell, at CLINTON CORRECTIONAL FACILITY in Dannemora, New York.

22.    On July 9, 2021, Plaintiff, restrained in his locked cell, reached his hand through the cell bars to grab the attention of Correction Officer Eric Holland, who was doing rounds. Plaintiff at the time was mourning a family member who had just passed away suddenly, and was having a particularly difficult day managing his grief. Plaintiff, still locked in his cell, caught CORRECTION OFFICER ERIC J. HOLLAND's shirt and asked Correction Officer Eric Holland for help.

23.    In response, instead of calling for an Office of Mental Health staff member and therefore, in violation of DOCCS Directives, CORRECTION OFFICER ERIC J. HOLLAND chose instead, to alert SERGEANT ERIC M. FESSETTE to the incident, who in response, arrived at Plaintiff's cell with CORRECTION OFFICER TONY E. ROCK and CORRECTION OFFICER WILLIAM F. NELSON.

24.    Plaintiff was still locked in his cell and at no risk to anyone. SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, and CORRECTION OFFICER WILLIAM F. NELSON ordered Plaintiff to put his hands in the feed up slot, and placed Plaintiff in mechanical restraints (shackles including a waist chain) and handcuffs and began escorting him towards the infirmary. Plaintiff at this time required no medical attention and did not know why staff were bringing him to the infirmary.

25.     From approximately 2:15pm to 3:00pm, Plaintiff was removed from his cell and escorted through the rotunda to the first and third floors of the infirmary where, at each location, he was brutally assaulted by CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER CHAD D. LABOMBARD, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER ZACHARY R. BABBIE, SERGEANT ERIC M. FESSETTE, and CORRECTION OFFICERS JANE/JOHN DOES 1-5 (CO Does) without any provocation. DEPUTY SUPERINTENDENT DENNIS W. BRADFORD authorized a portion of the assault on the third floor of the infirmary, and CORRECTION OFFICER MICHAEL J. CORYER recorded and witnessed, without intervening, that same portion of the assault.

26.     Upon information and belief, SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, and CORRECTION OFFICER WILLIAM F. NELSON escorted Plaintiff to the rotunda[1], at which point, without provocation and while Plaintiff was fully restrained, they began punching him, choking him, and calling him the N word.

27.     SERGEANT ERIC M. FESSETTE turned and punched Plaintiff on the left side of his face while CORRECTION OFFICER WILLIAM F. NELSON violently pulled on Plaintiff's waist chain causing him to be lurched forward and backward.  FESSETTE grabbed Plaintiff by the neck and threatened Plaintiff, "I will kill you and bury you under the auditorium."

28.     When FESSETTE finally released Plaintiff, Plaintiff was struggling to breathe and while experiencing episodes of dizziness, was also suffering back spasms from the chain being so violently pulled.

29.     Defendants brutally slammed Plaintiff's head against a stone wall multiple times and NELSON smashed his forehead into the wall while yelling, "stop banging your head against the wall!", in an effort to cover-up or otherwise conceal the assault that was actually happening.

30.     CORRECTION OFFICER TONY E. ROCK was present for this entire incident, observed the multitude of violations and abuse and did nothing to intervene despite having several opportunities to do so even after the sudden first punch by FESSETTE.

31.     Plaintiff was then shoved up a flight of stairs while FESSETTE punched Plaintiff several more times in the back of Plaintiff's head while NELSON continued to pull the chain causing Plaintiff to stumble and making it even harder for Plaintiff to breathe normally.

32.     At this time, SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, and CORRECTION OFFICER WILLIAM F. NELSON started to escort Plaintiff to the first floor of the infirmary.  Plaintiff, upon realizing where they wanted to take him, began experiencing a very real fear for his life.[2]

---

[1] The rotunda is widely known at Clinton as being a safe-zone for Correction Staff to assault incarcerated individuals, as there are no security cameras.

[2] The first floor of Clinton's infirmary is known amongst the incarcerated population as "The Slaughterhouse." There are no cameras and Correction Staff bring incarcerated individuals to the first floor exam rooms in order to assault them.

33. After reaching a room in the hospital on the 2nd floor, Defendants assaulted Plaintiff again, this time by punching him in his ribs and continuing to punch him in the back of his head, all while handcuffed.

34. SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, and CORRECTION OFFICER WILLIAM F. NELSON escorted Plaintiff to the third floor and placed in the restraint chair of the infirmary while the officers went to speak with staff from the Office of Mental Health. [3]

35. Plaintiff overheard FESSETTE lying to HOLLAND that Plaintiff was the one who was banging his own head against the wall and self-inflicted his injuries and also overheard officers lying that Plaintiff was on drugs.

36. SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, and CORRECTION OFFICER WILLIAM F. NELSON brought Plaintiff into a room to speak with a staff member from the Office of Mental Health, where CORRECTION OFFICER CHAD D. LABOMBARD placed Plaintiff in the restart chair and applied leg restraints.

37. SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER WILLIAM F. NELSON, and CORRECTION OFFICER CHAD D. LABOMBARD were all present in the room. Plaintiff had just been brutalized and felt vulnerable. Upon information and belief, CORRECTION OFFICER DOE was filming Plaintiff in the restart chair, making faces at Plaintiff from behind the camera. Nothing about the environment was safe.

38. Additionally, Plaintiff received no medical treatment at this time despite having obvious trauma to his person, specifically his head, face and neck. This denial of medical attention was extraordinarily inappropriate.

39. The Office of Mental Health staff then admitted him to the Residential Crisis Treatment Program, despite Plaintiff denying suicidality.

40. SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER ZACHARY R. BABBIE, and CORRECTION OFFICER CHAD D. LABOMBARD used excessive force against Plaintiff to remove him from the chair, violently pulling him to the ground. Plaintiff still had leg restraints applied.

41. SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER ZACHARY R. BABBIE, and CORRECTION OFFICER CHAD D. LABOMBARD then dragged Plaintiff by

---

[3] Notably, Plaintiff did not arrive on the third floor until approximately 30 minutes later, when the entire walk should have taken five minutes.

his waist chain to an observation cell on the Residential Crisis Treatment Program, potentially cell # 8.

42.    SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER ZACHARY R. BABBIE, and CORRECTION OFFICER CHAD D. LABOMBARD threw Plaintiff face down and slammed Plaintiff on to a bed frame while each one placed their knee(s) into Plaintiff's body, pinning him down on his head, neck, lower back and legs, fully positioning the already mechanically restrained Plaintiff.

43.    Plaintiff throughout this entire time, was still struggling to breathe.

44.    Upon information and belief, CORRECTION OFFICER TONY E. ROCK, along with FESSETTE, NELSON, BABBIE, and LABOMBARD watching, forcefully ripped Plaintiff's dreadlocks from his scalp, causing Plaintiff to bleed and scream.

45.    In addition to the physical trauma, this was also emotionally and spiritually traumatizing, especially given that Plaintiff is Rastafarian and his hair is an important representation of his religion in many ways.

46.    At this time, SERGEANT ERIC M. FESSETTE, CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER ZACHARY R. BABBIE, and CORRECTION OFFICER CHAD D. LABOMBARD asked Plaintiff if he would comply with a cavity search in order to fully admit him onto the Residential Crisis Treatment Program.  Already extremely violated and brutalized, and adamant that he did not require observation for suicidality, Plaintiff declined.

47.    Over Plaintiff's express objection, DEPUTY SUPERINTENDENT DENNIS W. BRADFORD approved a forced strip frisk and CORRECTION OFFICER MICHAEL J. CORYER, (pursuant to the report authored by FESSETTE), began filming, while OMH NURSE CATHLEEN A. REUSSER, R.N., DR. RICHARD J. DAMICO, along with CORYER, observed the violation of Plaintiff's rights under the Constitution of the United States and New York State Law and did nothing to prevent or otherwise mitigate the unlawful assault against the Plaintiff.

48.    SERGEANT ERIC M. FESSETTE then forcibly tore all Plaintiff's clothes from his body and conducted a cavity search of his anus and genitals by forcefully spreading his buttocks to get to his rectum.  CORRECTION OFFICER TONY E. ROCK, CORRECTION OFFICER WILLIAM F. NELSON, CORRECTION OFFICER ZACHARY R. BABBIE, and CORRECTION OFFICER CHAD D. LABOMBARD watched and failed to intervene.

49.    Plaintiff, at the time of this forced cavity search, had already been physically brutalized, threatened, harassed, abused, and restrained face down on the floor, unable to breathe, and experienced Correction staff ripping his hair from his scalp.  Further, Plaintiff still had mechanical restraints on at this point.  This cavity search, therefore, was sexual assault.

Case 9:24-cv-01314-FJS-TWD    Document 2    Filed 10/28/24    Page 11 of 24

50.    Upon completion of the forced strip frisk, NURSE CATHLEEN A. REUSSER injected Plaintiff with a sedative against his will.  Plaintiff's mechanical restraints were removed, he was placed in a smock, and secured in an observation cell where he was left to suffer while bleeding, injured, and naked under a blinding bright light, overwhelmed with the smells of urine and feces for 24 hours of the day.

51.    NURSE PAT MANOR saw and/or examined Plaintiff at this time and said he had no injuries, which was a lie and failed to treat him and failed to give him any adequate or reasonable medical attention.

52.    On or about July 12, 2021, Plaintiff was served with four (4) misbehavior reports falsely accusing Plaintiff of assault and fabricating evidence to bolster these false claims of assault.  Plaintiff suffered punishments from these sham hearings, over 100 days in solitary in violation of the HALT Act, and other horrible sanctions.

53.    All of the assault on staff charges were subsequently dismissed but the damage was already done.[4]  Notably, because all of these claims of assault on staff were dismissed, we are simply left with the violent and excessive use of force on Plaintiff with no justification.

54.    At the time of this horrific incident(s), Plaintiff was MHSL 3 and Mr. Bishop's mental health was totally ignored, disregarded and/or overlooked when determining Mr. Bishop's sanctions.  Mr. Bishop's mental health should have been addressed and evaluated when determining the punishments and the role Mr. Bishop's mental health had in Mr. Bishop's behavior with HOLLAND was also not factored in though it should have been.  This failure is further highlighted by an OMH staff note, which states that, "[g]iven the nature of events that resulted in Mr. Bishop being brought to OMH for an emergent mental health evaluation as well as his refusal to speak with writer, he is unable to be cleared, resulting in a RCTP admission."

55.    The very idea that Mr. Bishop's mental health was not a factor considered by the staff in determining Mr. Bishop's punishments/sanctions, is nefarious and egregious and in violation of the American with Disabilities Act.

56.    The hearing officer noted that these fabricated and false claims that Plaintiff caused the bite marks on the officer were timed fifteen minutes prior to this incident and threw out that portion of the ticket.  Any argument that this allegation was due to a clerical error on this one documents is blatantly false as there are other reports claiming that Mr. Bishop bit the officers.  This was a conspiracy to cover up the horrific excessive use of force.

57.    Additionally, there was a fabricated claim that Plaintiff punched an officer in the ribs after he was administered the medication intravenously and against his will.  This charge was also later dismissed.

---

[4] The one assault on staff charge that was not overturned was the Plaintiff's incident with HOLLAND, which was irrelevant and at a time and place separate and apart from all of the excessive use of force on Plaintiff and separate and apart from these other fabricated charges used to excuse the Defendants' excessive use of force, which were all thrown out.

58. Mr. Bishop continues to suffer immensely from these injuries physically, emotionally and spiritually. He continues to be attacked, falsely written up and humiliated by the DOCCS system, forcing him into solitary confinements and other punishments, and continuing to exacerbate his psychological damage and trauma.

<u>FIRST CAUSE OF ACTION</u>
**Negligence**

59. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

60. Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, through the CLINTON CORRECTIONAL FACILITY, the supervisory defendants and the individually named defendants, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

61. At all times relevant herein, Defendant had the duty and responsibility to not enable, allow, condone, and/or authorize the commission of acts of violence against its incarcerated individuals, including Plaintiff.

62. At all times relevant herein, Defendant owed to incarcerated individuals, including
Plaintiff, a duty to use reasonable care to protect incarcerated individuals, including Plaintiff, from reasonably foreseeable harm.

63. At all times relevant herein, Defendant was in a special relationship with, and owed a special duty to, incarcerated individuals, including Plaintiff, to protect incarcerated individuals, including Plaintiff, from reasonably foreseeable harm.

64. Additionally some of the officers were acting in a supervisory capacity and the tortious acts occurred while discharging their supervisory duties.

65. Defendant, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, as the owner, operator, and possessor of the prisons discussed herein, had the duty to take reasonable measures to maintain said prisons in a reasonably safe condition, including taking reasonable precautions to prevent and minimize the risk of abuse of its incarcerated individuals, including Plaintiff.

66. Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION breached its duty to protect Plaintiff, owed a duty to safeguard its incarcerated individuals and failed to use reasonable care, resulting in injuries to Plaintiff.

67.    The damages and injuries claimed herein arise out of the affirmative acts, omissions, and failures to perform acts within the scope of their employment and in the discharge of their duties as officers and employees of NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION and its Prison.

68.    In addition, the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, the supervisory defendants, and individually named defendants failed to protect plaintiff from the brutal attack he suffered at the hands of a fellow incarcerated individual, who was clearly violent, belligerent, and dangerous.  These failures constituted a breach of their duty, and proximately caused the assault of plaintiff.

69.    Additionally, despite their duty to protect plaintiff while he was detained at the CLINTON CORRECTIONAL FACILITY, the defendants failed to take reasonable steps to do so.  This failure constituted a breach of their duty, and proximately caused the assault of plaintiff.

70.    Defendants, by and through its correction officers and officials, knew or should have known that there was a foreseeable risk of attack on Plaintiff, as outlined above, and failed and refused to take adequate and necessary steps to separate Plaintiff from same despite said notice of same.

71.    It is also alleged that the Correction Officers failed and refused to timely intervene to prevent the attack from continuing once it had started.

72.    The brutal attacks of Mr. Bishop by the defendants were carried out in such a negligent fashion, it demonstrated lack of regard for Plaintiff's right to be free from cruel and unusual punishment, without the due care and diligence which prudent and reasonable officers would have displayed.

73.    Additionally, Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION had a duty to properly and adequately staff the Jail and failed to properly and adequately staff the facility at all relevant times herein alleged in breach of its duty, causing injuries to Plaintiff.

74.    As a result of the aforesaid negligence, gross negligence, carelessness, recklessness,
and deliberate indifference, Plaintiff suffered physical injuries, which required medical treatment from medical professionals, as well as emotional trauma.

75.    As a direct and proximate result of the negligence detailed above, plaintiff sustained the damages hereinbefore alleged.

Case 9:24-cv-01314-FJS-TWD    Document 2    Filed 10/28/24    Page 14 of 24

## SECOND CAUSE OF ACTION
**Negligent Hiring/Training/Discipline/Retention/Supervision**

76.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

77.     The NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train, and supervise the individually named correction officer defendants, individuals who were unfit for the performance of correction officer duties on July 9, 2021 and continuing, at the aforementioned location.

78. In the event all or some of Defendant's employees involved in the instant action were not acting within the scope of their employment, it is alleged that all or some not acting within the scope of their employment were negligently hired, retained and trained by defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN and its Corrections Division within the Prison system.

79.     Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN, their employees, representatives, agents, and assigns were deliberately indifferent to the safety, security, health, and well-being of Plaintiff and were negligent, grossly negligent, and/or reckless in safeguarding him.

80.     At all times relevant, Defendants had the duty and responsibility to properly and adequately staff CLINTON CORRECTIONAL FACILITY and failed to do so.

81.     The staffing issues were documented and had major safety and security implications and were attributed to this incident.

82.     As a direct and proximate cause of the negligence described, Plaintiff sustained permanent and severe damages.

## THIRD CAUSE OF ACTION
**Violations of the 8th and 4th Amendments including
Unconstitutional Conditions of Confinement,
Excessive Use of Force & Violation of Rights to be Free
from Punishment**

83.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

Case 9:24-cv-01314-FJS-TWD   Document 2   Filed 10/28/24   Page 15 of 24

84.   The Defendants' wrongdoings described above in the Plaintiff's Statement of Facts, which caused Plaintiff to suffer physical injury(ies), amounted to excessive force in violation of the Constitution.

85.   Here, the Defendants satisfy the subjective prong that Defendants acted in bad faith and that the actions as described above, violated the standards of decency.

86.   Defendants failed to protect Mr. Bishop from the conditions that posed a substantial risk of harm and the Defendants were aware of the risks to Mr. Bishop's health and safety and disregarded these substantial risks of harm.

87.   The use of force against Mr. Bishop was done maliciously and sadistically and constituted cruel and unusual punishment.

88.   The unlawful conduct of Defendants was willful, malicious, oppressive and reckless and was of such a nature that punitive damages should be imposed.

89.   The Defendants' conduct was entirely unjustified and their actions constituted excessive use of force.

90.   Defendants deprived him of his rights under the Eighth Amendment when they threatened him so severely that he was significantly psychologically injured.  Such threats were connected to the actual assaults

91.   The defendants by unjustifiably attacking the Plaintiff and their actions in the aftermath of the attacks violated Plaintiff's right to be free from punishment and deprivation of life and liberty without due process of law and to be free from deliberate indifference to those rights.

92.   The defendants deprived Plaintiff of due process when Mr. Bishop's disciplinary confinement rose to the level of significant hardship and he was denied the procedural safeguards in how the hearings were conducted.

93.   The use of force was not in an effort of good faith to restore discipline, but rather was used maliciously and sadistically to hurt Mr. Bishop.

94.   Defendants were aware of the repulsive and dehumanizing conditions within the OMH cells and exam rooms.

95.   As a direct and proximate cause of the negligence described, Plaintiff sustained permanent and severe damages.

<u>FOURTH CAUSE OF ACTION</u>
**Failure to Intervene**

Case 9:24-cv-01314-FJS-TWD   Document 2   Filed 10/28/24   Page 16 of 24

96.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

97.    Defendants had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in their presence by other correction officers and the dangerous incarcerated individual.

98.    Defendants failed to intervene to prevent the unlawful conduct described herein.

99.    Defendants failed to protect the plaintiff from a known dangerous prisoner and failed to use adequate supervision to stop this attack, which was reasonably foreseeable.

100.   Plaintiff was viciously assaulted by another officer, and the defendants failed to intervene or otherwise protect plaintiff as they were obligated to do, as alleged above.

101.   Defendants were in a position to intervene and had an opportunity to intervene to stop or mitigate this assault on Plaintiff and took no reasonable steps to intervene or stop the attack on Plaintiff.

102.   By reason of the foregoing, and by sanctioning, encouraging, and failing to prevent incarcerated individual assailants from assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, the defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. Section 1983, including but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishment and gratuitous and excessive force.

103.   The Individual Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as DOCCS officers and employees. Said acts by the Individual Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. The Individual Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

104.   These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

105.   At all times relevant to this claim, defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN, and its Jail, its employees and/or agents, including Corrections Officers and Medical Personnel had a duty to protect Plaintiff.

106.   At all times relevant to this claim, defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF

MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN, and its Jail, its employees and/or agents, including Corrections Officers and Medical Personnel failed to properly supervise Plaintiff, failed to safeguard and protect the Plaintiff, failed to prevent said assault, failed to stop said assault, and failed to timely procure proper medical care for the Plaintiff, among other failures.

107. Additionally, Defendants failed to intervene when employees were failing to thoroughly investigate all instances of wrongdoing, failed to report all knowledge and suspicion, witnessing of and any information of wrongdoing and failed to report all instances of wrongdoing, before this incident and also in a reasonable time during this incident and in its aftermath.

108. Defendants were at all times agents, servants, and employees acting within the scope of their employment by the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN, which are therefore responsible for their conduct.

109. The NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN, as the employer of the officer defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

110. As a direct and proximate cause of the negligence described, Plaintiff sustained permanent and severe damages.

## FIFTH CAUSE OF ACTION
### Deliberate Indifference to Plaintiff's Wellbeing and Medical Needs

111. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

112. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard for Plaintiff's rights failed or refused to do so.

113. Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION and OFFICE OF MENTAL HEALTH through the Prison and its officers failed to comply with its policies and/or directives concerning adequate supervision and/or protecting incarcerated individuals from violent assaults.

114. Defendants also failed to provide adequate medical treatment in a timely fashion and refused to ensure that Plaintiff received the proper treatment.

115. By their deliberate indifference to Plaintiff's welfare and safety, Defendants deprived Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the State of New York, pursuant to the New York State Constitution, common law, and statutes.

116. The Correction officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment when they intentionally delayed and denied Mr. Bishop access to appropriate medical case.

117. The medical personnel intentionally delayed and deprived Mr. Bishop of adequare medical care despite knowing that Mr. Bishop had sufficiently serious medical emergencies.

118. Defendant's conduct demonstrated refusal to provide essential care to incarcerated individuals, including Plaintiff and were sufficiently harmful and not in furtherance of protecting, treating or caring for Plaintiff.

119. In committing the acts and omissions complained of herein, Defendants acted with deliberate indifference to Mr. Bishop's needs.

120. Defendants acted willingly, knowingly demonstrated a refusal to provide essential care to incarcerated individuals, including Plaintiff.

121. As a proximate cause of the acts of defendants, Plaintiff suffered, inter alia, permanent physical injury, disfigurement, medical expenses, and severe mental and emotional anguish in connection with the deprivation of his aforementioned rights.

122. Despite being aware that Plaintiff was suffering through excruciating pain and required additional treatment from medical professionals, defendants delayed Plaintiff's medical treatment and refused to administer and/or properly procure immediate and adequate medical attention.

123. This delay in medical treatment for Plaintiff's injuries resulted in permanent pain and injury that could have been prevented had Plaintiff received treatment in a timely manner.

124. Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN, acting under the pretense and color of law, permitted, tolerated, and was deliberately indifferent to a pattern and practice of incarcerated individual-on-incarcerated individual assaults sanctioned by uniformed staff and their superiors. The NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION has been on notice of the existence of the brutal attacks and the injuries it has inflicted on incarcerated individuals such as plaintiff LANCE BISHOP for several years, and failed to adequately protect incarcerated individuals from such violence.  The widespread tolerance of correction officers' sanction of incarcerated individual assaults, and the existence of the Program generally, constitutes municipal policy, practice or custom and led to plaintiff's assault.

125. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice and custom pursuant to which Plaintiff was subjected to these brutal attacks by officers on defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION has deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983,

including, but not limited to, the right to be free from gratuitous and excessive force guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

126.    As a direct and proximate result of such acts, defendants deprived Plaintiff of his rights under the laws of the State of New York.

127.    Defendants were at all times agents, servants, and employees acting within the scope of their employment by the NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH, SULLIVAN and CLINTON CORRECTIONAL FACILITY, which are therefore responsible for their conduct.

128.    The unlawful conduct of Defendants was willful, malicious, oppressive and reckless and was of such a nature that punitive damages should be imposed.

129.    As a result of the as a direct and proximate cause of the negligence described, Plaintiff sustained permanent and severe damages.

SIXTH CAUSE OF ACTION
**Violation of the New York State Constitution Art. I § 5**

130.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

131.    At all times relevant herein, Defendant had a duty to ensure that, pursuant to the New York State Constitution, cruel and unusual punishment not be inflicted on Plaintiff.

132.    At all times relevant herein, Defendant had the duty and responsibility to not enable, allow, condone, and/or authorize its correctional officers and other personnel or staff, including the named defendants, to, by force or threat of force, knowingly injure, intimidate, interfere, oppress, and threaten incarcerated individuals, including Plaintiff, in the free exercise and enjoyment of incarcerated individuals', specifically Plaintiff's, rights and privileges secured to incarcerated individuals, including Plantiff, by the U.S. Constitution, the New York State Constitution, and the laws of the State of New York and New York City, including, but not limited to:

    a.    the right to be free from cruel and unusual punishment;
    b.    the right to be free from abuse, assault, and acts of violence, such as the one permitted by C.O. Barrios; and
    c.    all other rights and privileges conferred upon Plaintiff by the U.S. Constitution, the New York Constitution, and the laws of the State of New York.

133.    At all times relevant herein, Defendants breached its duty to ensure that, pursuant to the New York State Constitution, cruel and unusual punishment not be inflicted on Plaintiff.

Case 9:24-cv-01314-FJS-TWD    Document 2    Filed 10/28/24    Page 20 of 24

134. Cruel and unusual punishment was inflicted upon Plaintiff while Plaintiff was an incarcerated individual in the custody and care of Defendants.

135. Cruel and unusual punishment was inflicted upon Plaintiff when Officer E. BANKS abused Plaintiff, as described above.

136. Defendant enabled, allowed, condoned, and authorized Officer E. BANKS to commit the above-described abuse and to inflict cruel and unusual punishment upon Plaintiff, due to the acts and omissions described herein, including, but not limited to, failing to adequately and reasonably screen, monitor, supervise, train, investigate, and discipline the defendant Correction Officers and Medical Personnel.

137. Defendants enabled, allowed, condoned, and authorized its Correction Officers to commit the above-described abuse and to inflict cruel and unusual punishment upon Plaintiff, due to the acts and omissions described herein, including, but not limited to, failing to protect and to ensure the safety of incarcerated individuals, including Plaintiff, from reasonably foreseeable acts of abuse perpetrated by incarcerated individual White, a dangerous incarcerated individual.

138. Defendant's acts and omissions described above were the proximate cause of, and a substantial contributing factor to, Plaintiff's injuries and damages described herein.

139. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

<u>SEVENTH CAUSE OF ACTION</u>
**Conspiracy and Failure to Prevent Conspiracy**

140. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

141. Upon information and belief, the individual defendants agreed among themselves and with other individuals to act in concert to deprive Mr. Bishop of his clearly established rights, including but not limited to his right to be free from cruel and unusual punishment and to receive necessary care for a serious medical need.

142. In furtherance of the conspiracy, the individual defendants engaged in and facilitated numerous overt acts, including, without limitation, assaulting Mr. Bishop, denying him necessary medical care, and upon information and belief, submitting false statements and manufacturing false evidence to hide their malfeasance.

143. The individual defendants are therefore liable for Mr. Bishop's injuries under 42 U.S.C. § 1985.

144. The individual defendants are therefore liable for Mr. Bishop's injuries under 42 U.S.C. § 1986.

145.  The defendants are liable for Mr. Bishop's injuries under 42 U.S.C. § 1942 when they deprived Mr. Bishop of a liberty interest and violated Mr. Bishop's due process rights in their disciplinary hearing and punishments of Mr. Bishop.

146.  The individual defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

147.  The individual defendants knew that acts previously mentioned, which violated Mr. Bishop's constitutional rights, were about to be committed, and they had the power to prevent or aid in preventing the commission of the same, but they neglected or refused to do so.

148.  As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above and as a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
### 1st Amendment Religious Freedom

149.  Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

150.  Plaintiff's 1st Amendment rights were violated when his dreadlocks were violently ripped from his head.

151.  Plaintiff is a Rastafarian and wears his hair in dreadlocks.  It is undisputed that he is sincere in his beliefs and that they are of religious nature and that any cutting or removal of his dreadlocks would impinge on those beliefs.

152.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
### Title II of the American with Disabilities Act, 42 U.S.C. §§ 12131-34 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 Against the State of New York

153.  Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

154.  The defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, OFFICE OF MENTAL HEALTH, ANNUCCI, MCINTOSH and SULLIVAN – acting through its agents – violated Mr. Bishop's rights guaranteed by the Americans with Disabilities Act and the Rehabilitation Act (collectively referred to as "the disability statutes").

Case 9:24-cv-01314-FJS-TWD      Document 2      Filed 10/28/24      Page 22 of 24

155.  Plaintiff is an individual with disabilities as defined by Executive Law § 292 (21).

156.  By failing to follow the prescribed guidelines for mental health conditions and failing to provide Mr. Bishop his required mental health care encounters, among other programs, Mr. Bishop was denied access to and was discriminated against due to his mental health conditions.

157.  On information and belief, the prescribed guidelines for mental health conditions were adhered to for other inmates.

158.  By reason of the State of New York's acts and omissions, Mr. Bishop has endured substantial physical, emotional injuries was otherwise damaged and injured.

159.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

<u>TENTH CAUSE OF ACTION</u>
**Violation of the HALT Act**

160.  Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

161.  Plaintiff was held in solitary confinement at Clinton Correctional Facility and within the DOCCS system.  DOCCS has repeatedly subjected Mr. Bishop to solitary confinement despite his disabilities.

162.  The conditions exacerbated by OMH's failure to provide Mr. Bishop with treatment care and medication caused Mr. Bishop's mental health to deteriorate.

163.  HALT specifies that "[p]ersons in a special population . . . shall not be placed in segregated confinement for any length of time, except in keeplock for a period prior to a disciplinary hearing" (Correction Law § 137 [6] [h]).

164.  Executive Law § 292 (21)—commonly referred to as the New York State Human Rights Law—defines disability as "(a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment . . . ."

165.  Plaintiff is an individual with disabilities as defined by Executive Law § 292 (21).
166.  Defendants have nonetheless placed Plaintiff in solitary confinement, or "segregated confinement," as that term is defined by Correction Law § 2 (23).

167.  Defendants' actions violated Correction Law § 137 (6) (h).

168. The DOCCS and OMH Solitary Policies authorize Defendants to place people with disabilities in solitary confinement despite New York state law barring Defendants from doing so.

169. Thus, Defendant DOCCS' policies permit Defendants to place people with other disabilities, as defined in Executive Law § 292 (21), in solitary confinement in violation of Correction Law § 137 (6) (h). Defendant OMH's continuing policy renders an incarcerated person eligible for a mental health disability-based exclusion from segregated confinement only if the person is diagnosed with "serious mental illness," as that term has been defined by outdated legislation (see Correction Law § 137 [6] [e]). This definition is narrower than the definition provided in Executive Law § 292 (21). As a result, Defendant OMH's policy authorize Defendants to place people with all other qualifying mental health disabilities, as defined in Executive Law § 292 (21), in solitary confinement in violation of Correction Law § 137 (6) (h).

170. As a result of these unlawful and continuing policies, Defendants authorize themselves to and have in fact unlawfully placed Mr. Bishop in solitary confinement.

171. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LANCE BISHOP demands judgment against the defendants on each cause of action in amounts to be determined upon the trial of this action which exceeds the jurisdiction of lower courts, inclusive of punitive damages and attorneys' fees inclusive of costs and disbursements of this action, interest and such other relief as is appropriate under the law. That the plaintiff recover the cost of the suit herein, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

Dated: New York, New York
       July 8, 2024

                              Respectfully Submitted:

By: _____
    Ellie Silverman, Esq.
    Ellie Silverman Law P.C.
    *Attorneys for Plaintiff*
    745 5th Avenue, Suite 500
    New York, New York 10151

Case 9:24-cv-01314-FJS-TWD     Document 2     Filed 10/28/24     Page 24 of 24

## ATTORNEY VERIFICATION

ELLIE SILVERMAN, ESQ., duly admitted to practice law in the State of New York hereby affirms the following statements to be true under the penalties of perjury, pursuant to Rule 2106 of the CPLR:

Affirming attorney is Principal at Ellie Silverman Law P.C., attorneys for the Plaintiff in the within action;

That I have read the foregoing Complaint, know its contents, and they are true to my knowledge, except those matters that are alleged on information and belief, and as to those matters I believe them to be true with the source of my information and the grounds for my belief being derived from interviews with the Plaintiff and from the file maintained in the normal course of business;

That I am familiar with the facts and circumstances surrounding this action and the bases for all matters alleged herein, unless otherwise stated, are an inspection of the record of this case, internal correspondences, independent investigation and research, and other relevant materials;

That I am providing this Verification because the Plaintiff does not reside within New York County, and/or is not presently in New York County to appear in my office; and

That I affirm on behalf of Plaintiff that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: July 8, 2024
     New York, New York

_____
Ellie Silverman, Esq.

## CERTIFICATION

Pursuant to 22 NYCRR §130-1.1-a, the undersigned, an attorney duly admitted to practice in the courts of the State of New York, certifies that, upon information and belief, and reasonable inquiry, the contentions contained in the annexed document are not frivolous as defined in subsection (c) of the aforesaid section.

Dated: July 8, 2024
     New York, New York

_____
Ellie Silverman, Esq.