**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────

LANCE BISHOP,

                Plaintiff,

          -v-                                9:24-CV-1314 (AJB/TWD)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION *et al.*,

                Defendants.

───────────────────────────────────

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

**I.    INTRODUCTION**

On July 9, 2024, plaintiff Lance Bishop ("plaintiff"), an individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed this 42 U.S.C. § 1983 action in Supreme Court, Clinton County, alleging that DOCCS, the New York State Office of Mental Health ("OMH"), the Clinton Correctional Facility, fourteen DOCCS or OMH officials, and five John Does violated his civil rights while he was being housed at Clinton Correctional Facility. Dkt. No. 2. Defendants have removed the action to federal court, where it was initially assigned to Senior U.S. District Judge Frederick J. Scullin. Dkt. No. 1.

On November 21, 2024, defendants moved under Rule 12(b) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint. Dkt. No. 26. After the motion was fully briefed, Dkt. Nos. 32, 33, the matter was reassigned to this Court for all further proceedings, Dkt. No. 34.

The motion will be considered on the basis of the submissions without oral argument.

## II.     BACKGROUND

The following facts are taken from plaintiff's state-court complaint, Dkt. No. 2, and are assumed true for the purpose of assessing the motion to dismiss.

On July 9, 2021, plaintiff was an incarcerated individual held in DOCCS custody in the "Upper F Block, 5-7 cell" of Clinton Correctional Facility. Compl. ¶¶ 21–22. Plaintiff was in his cell "mourning a family member who had just passed away suddenly, and [he] was having a particularly difficult day managing his grief." *Id*. ¶ 22. Plaintiff "reached his hand through the cell bars to grab the attention of Correction Officer Eric J. Holland, who was doing rounds." *Id*.

Plaintiff asked CO Holland for help. Compl. ¶ 22. Instead of calling for an OMH staff member, CO Holland alerted Sergeant Eric M. Fessette, who arrived with Correction Officer Tony E. Rock and Correction Officer William F. Nelson. *Id*. ¶ 23. Sergeant Fessette, CO Rock, and CO Nelson ordered plaintiff "to put his hands in the feed up slot," placed him "in mechanical restraints (shackles including a waist chain) and handcuffs," and "began escorting him towards the infirmary. *Id*. ¶ 24. "Plaintiff at this time required no medical attention and did not know why staff were bringing him to the infirmary." *Id*.

During this "escort," officers took plaintiff "through the rotunda to the first and third floors of the infirmary where, at each location, he was brutally assaulted by" Sergeant Fessette, CO Rock, CO Nelson, Correction Officer Chad D. LaBombard, and Correction Officer Zachary R. Babbie.[1] Compl. ¶ 25. According to the complaint, this rotunda "is widely known at Clinton [Correctional Facility] as being a safe-zone for [facility staff] to assault incarcerated individuals, as there are no security cameras." *Id*. ¶ 26 n.1.

---

[1] This paragraph includes the five John Doe Correction Officers, who are discussed in more detail *infra*.

In a series of events that began around 2:15 p.m. and lasted for about forty-five minutes, plaintiff alleges that Sergeant Fessette, CO Rock, and CO Nelson "began punching him, choking him, and calling him [a racial slur]." Compl. ¶ 26. Plaintiff alleges that the assaults began when Sergeant Fessette punched plaintiff on the left side of his face while CO Nelson violently pulled on plaintiff's waist chain, "causing him to be lurched forward and backward." *Id*. ¶ 27. At that time, Sergeant Fessette also grabbed plaintiff by the neck and threatened him, stating: "I will kill you and bury you under the auditorium." *Id*.

Sergeant Fessette released plaintiff, who "was struggling to breathe" and "experiencing episodes of dizziness" and "back spasms from the chain being so violently pulled." Compl. ¶ 28. Next, CO Nelson smashed plaintiff's forehead into the wall multiple times. *Id*. ¶ 29. CO Rock was present for these events but did not intervene. *Id*. ¶ 30. Afterward, Sergeant Fessette, CO Rock, and CO Nelson shoved plaintiff up a flight of stairs. *Id*. ¶ 31. Sergeant Fessette punched plaintiff "several more times" in the back of his head while CO Nelson continued to pull on the waist chain, causing plaintiff to stumble and making it hard for him to breathe normally. *Id*.

Sergeant Fessette, CO Rock, and CO Nelson began escorting plaintiff to the first floor of the infirmary. Compl. ¶ 32. According to plaintiff, incarcerated individuals call this area of the infirmary "the Slaughterhouse" because there are no cameras and staff bring people "to the first floor exam rooms in order to assault them." *Id*. & n.2. When they reached a room on the second floor of the hospital, Sergeant Fessette, CO Rock, and CO Nelson assaulted plaintiff again, "this time by punching him in his ribs and continuing to punch him in the back of his head, all while handcuffed." *Id*. ¶ 33. Afterward, defendants escorted plaintiff to the third floor and placed him "in the restraint chair" while they went to speak to OMH staff. *Id*. ¶ 34. According to plaintiff,

the trip from his cell to the restraint chair took about thirty minutes, even though the whole trip should not last more than five. *Id*. & n.3.

CO Holland arrived. Compl. ¶ 35. Plaintiff overheard Sergeant Fessette falsely tell CO Holland that plaintiff had been banging his own head against the wall, that he had inflicted his own injuries and that he was "on drugs." *Id*. A short time later, Sergeant Fessette, CO Rock, and CO Nelson brought plaintiff into another room to speak with an OMH staff member. *Id*. ¶ 36. CO LaBombard put plaintiff in a restraint chair and applied leg restraints. *Id*. At this time, Correction Officer Doe #1 "was filming" plaintiff in the restraint chair and "making faces" at him from behind the camera. *Id*. ¶ 37.

Plaintiff had "obvious trauma" to his head, face, and neck. Compl. ¶ 38. But he did not receive any medical treatment. *Id*. Instead, the OMH staff member who met plaintiff admitted him to the Residential Crisis Treatment Program even though he denied "suicidality." *Id*. ¶ 39. At this time, Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, and CO Babbie removed plaintiff from the restraint chair and "violently pull[ed] him to the ground" even though he was still in leg restraints. *Id*. ¶ 40.

Next, Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, and CO Babbie dragged plaintiff by his waist chain to an "observation cell" in the Residential Crisis Treatment Program. Compl. ¶ 41. There, defendants threw plaintiff "face down" and "slammed" him "on to a bed frame while each one placed their knee(s) into [his] body, pinning him down on his head, neck, lower back and legs" even though he was still "mechanically restrained." *Id*. ¶ 42. Plaintiff was struggling to breathe throughout this entire ordeal. *Id*. ¶ 43.

CO Rock "forcefully ripped" plaintiff's dreadlocks from his scalp, causing him "to bleed and scream." Compl. ¶ 44. Sergeant Fessette, CO Nelson, CO LaBombard, and CO Babbie did

not intervene to stop him. *Id*. Instead, they stood by and watched. *Id*. Plaintiff alleges that this was "emotionally and spiritually traumatizing" because his hair is an important representation of his Rastafarian religion. *Id*. ¶ 45.

Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, and CO Babbie asked plaintiff "if he would comply with a cavity search" needed to "fully admit him" to the Residential Crisis Treatment Program. Compl. ¶ 46. Plaintiff refused. *Id*. Over plaintiff's "express objection," Deputy Superintendent Dennis W. Bradford "approved a forced strip frisk." *Id*. ¶ 47. Correction Officer Michael J. Coryer "began filming" while OMH Nurse Cathleen A. Reusser and OMH physician Dr. Richard J. D'Amico stood by and watched. Compl. ¶ 47.

At that time, Sergeant Fessette "forcibly tore all [plaintiff's] clothes from his body and conducted a cavity search of his anus and genitals by forcefully spreading his buttocks to get to his rectum." Compl. ¶ 48. CO Rock, CO Nelson, CO LaBombard, and CO Babbie watched and failed to intervene. *Id*. According to plaintiff, this cavity search "was sexual assault." *Id*. ¶ 49.

Nurse Reusser injected plaintiff "with a sedative against his will." Compl. ¶ 50. After that, plaintiff's mechanical restraints were removed, "he was placed in a smock, and secured in an observation cell where he was left to suffer while bleeding, injured, and naked" under bright lights that were blinding. Compl. ¶ 50. There, plaintiff was "overwhelmed with the smells of urine and feces for 24 hours of the day." *Id*. Nurse Pat Manor examined plaintiff at this time and "said he had no injuries, which was a lie." *Id*. ¶ 51. Nurse Manor also "failed to treat him and failed to give him any adequate or reasonable medical attention." *Id*.

Several days later, on July 12, 2021, plaintiff was served with four misbehavior tickets that falsely accused him of assault and fabricating evidence. Compl. ¶ 52. Plaintiff spent over 100 days in solitary confinement and suffered "other horrible sanctions" as a result of the false

charges. *Id*. Almost all of these false charges were later dismissed, but the damage was already done. *Id*. ¶ 54 & n.4.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id*.

Rule 12(b)(1) motions can be "facial" or "fact-based." *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id*. at 56. Under those circumstances, the plaintiff bears no evidentiary burden. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). Instead, the court must determine whether the complaint and its exhibits plausibly allege facts giving rise to subject-matter jurisdiction. *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence outside of the pleading. *See Carter*, 822 F.3d at 57. In that scenario, the plaintiff will ordinarily need to come forward with evidence of their own to controvert the defendant's showing. *Id*. If the defendant identifies "material and controverted" extrinsic evidence, the court "will need to make findings of fact in aid of its decision." *Id*. However, "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading. *Id*.

**B. Rule 12(b)(6)**

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

**IV. DISCUSSION**

Plaintiff's state-court complaint asserts more than ten causes of action against seventeen named defendants and five John Does. Dkt. No. 2. Plaintiff has named as defendants DOCCS, OMH, Acting DOCCS Commissioner Anthony J. Annucci ("Acting Commissioner Annucci"), OMH Commissioner Ann Marie T. Sullivan ("Commissioner Sullivan"), Clinton Correctional Facility, Clinton Correctional Facility Superintendent "McIntosh," Clinton Correctional Facility Deputy Superintendent Bradford, Sergeant Fessette, CO Rock, CO LaBombard, CO Nelson, CO Coryer, CO Holland, CO Babbie, Nurse Reusser, Dr. D'Amico, Nurse Manor, and five John Doe

Correction Officers. *Id*. Plaintiff's state-court complaint also enumerates ten causes of action, some of which include multiple claims for relief:

-**Count One** is a state-law negligence claim against DOCCS and Clinton Correctional Facility;

-**Count Two** is a state-law negligent hiring, training, discipline, retention, and supervision claim against DOCCS, OMH, Acting Commissioner Annucci, Clinton Correctional Facility Superintendent McIntosh, and Commissioner Sullivan;

-**Count Three** are § 1983 claims under the Fourth and Eighth Amendments for excessive force and conditions-of-confinement against "defendants";

-**Count Four** are what appear to be state- and federal-law claims for failure to intervene against "defendants";

-**Count Five** are what appear to be state- and federal-law claims for deliberate medical indifference against DOCCS, OMH, Acting Commissioner Annucci, Clinton Correctional Facility Superintendent McIntosh, Commissioner Sullivan, and "defendants";

-**Count Six** is a state-law constitutional claim against "defendants," including a non-party correction officer named "Officer E. Banks";

-**Count Seven** are federal-law conspiracy claims against "defendants";

-**Count Eight** is a § 1983 First Amendment claim for violation of religious freedom based on the alleged removal of plaintiff's dreadlocks;

-**Count Nine** are federal-law claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 (the "Rehabilitation Act") against "the State of New

York," DOCCS, OMH, Clinton Correctional Facility Superintendent McIntosh, and Commissioner Sullivan;

-**Count Ten** is a state-law claim based on a violation of the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT Act") against "defendants."

**A. Defendants' Motion to Dismiss**

Defendants have moved to dismiss plaintiff's state-court complaint in its entirety. Dkt. No. 26. According to defendants, many of the named defendants (such as DOCCS, OMH, and Clinton Correctional Facility) are immune from the state- or federal-law claims asserted against them while other claims are insufficiently alleged (primarily due to an alleged lack of "personal involvement"). *See id*. In response, plaintiff has reasonably consented to the dismissal of the immune defendants and his legally deficient claims but insists that his Third, Fourth, Fifth, and Eighth causes of action are sufficiently alleged to warrant discovery. *See* Dkt. No. 32.

The parties' areas of agreement do not perfectly overlap with the causes of action that are enumerated in the complaint. First, based on plaintiff's representation that he "does not oppose" "Points 1-7, 9-11, and 13-14 of the motion to dismiss," Dkt. No. 32 at 9, the following causes of action will be dismissed: Count One, Two, Count Six, Count Seven, Count Eight, Count Nine, Count Ten, the official-capacity § 1983 claims, and any remaining state-law claims.[2] *See id*. Likewise, based on plaintiff's consent, the following defendants will be dismissed: DOCCS, OMH, Clinton Correctional Facility, Acting Commissioner Annucci, Commissioner Sullivan, Superintendent McIntosh, Deputy Superintendent Bradford, and CO Holland. *See id*.

These concessions appear to leave the federal-law components of Count Three, Count Four, Count Five, and Count Eight (§ 1983 claims for excessive force / a failure to intervene,

---

[2] Any Fourteenth Amendment claims asserted in the complaint (whether or not listed under a claim heading) are also dismissed. Dkt. No. 32 at 9 (consenting to defendants' Point IX).

strip search / cavity search, conditions-of-confinement, deliberate medical indifference, and for violation of religious freedom) against defendants Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, Nurse Reusser, Dr. D'Amico, Nurse Manor, and one Doe.[3]

"Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1230 (1997). Although the state-of-mind requirement might vary, *Daniels v. Williams*, 474 U.S. 327, 330 (1986), a § 1983 claim holds an individual personally liable for the role his or her acts or omissions played in violating someone's constitutional rights, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "To establish a Section 1983 violation, a plaintiff must plead (and later prove) that each defendant was personally involved in the alleged constitutional violation." *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023).

Defendants contend that plaintiff's remaining causes of action must be dismissed because his complaint is an "impermissible group pleading[ ]." Dkt. No. 26-2 at 23–24. This argument is rejected. There is a meaningful difference between, on the one hand, a pleading that fails to differentiate between alleged misconduct by multiple defendants, and, on the other, a pleading that alleges misconduct and/or bystander liability that is attributable to a relatively large number of defendants. As discussed *infra*, plaintiff's complaint falls into the latter category because it plausibly alleges, at least for the purpose of a pre-answer motion to dismiss, how each of the remaining defendants were "personally involved" in the alleged misconduct.

---

[3] The only non-conclusory factual allegation in the pleading against any of the five John Doe defendants involve an unidentified defendant that the Court has designated as "Doe #1," who allegedly filmed plaintiff after he was put into the restraint chair. *See* Compl. ¶ 37 Although the Court recognizes that plaintiff's complaint accuses all five John Does of being involved in the "brutal[ ] assault[s]," Compl. ¶ 25, the pleading itself does not include any non-conclusory factual allegations against any of the other four Does. Because plaintiff's complaint fails to allege that Does #2–#5 were "personally involved" in any actionable misconduct, those defendants must be dismissed without prejudice. *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021).

**A.  § 1983 Excessive Force / Failure-to-Intervene Claims** (Counts Three and Four)

The Eighth Amendment protects incarcerated individuals from the infliction of cruel and unusual punishment.  *See* U.S. Const. amend. VIII.  "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (cleaned up).

To plausibly state an Eighth Amendment excessive force claim, the plaintiff must allege: (1) a "sufficiently serious" or "harmful enough" use of force occurred (measured objectively); and (2) that the defendant inflicted the force "wantonly," *i.e.*, for malicious and sadistic reasons rather than in a good-faith effort to maintain or restore discipline (measured subjectively).  *See, e.g.*, *Harris v. Miller*, 818 F.3d 49, 63–64 (2d Cir. 2016) (per curiam); *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015).  Correction officials may also be held liable if they fail to intervene to stop the use of excessive force by another officer, provided that they observed the conduct and had a realistic opportunity to intercede.  *See, e.g.*, *Slolely v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019) (collecting cases).

Measured against this general legal standard, plaintiff has plausibly alleged that Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, and CO Doe #1 each violated his Eighth Amendment rights during the events described in the pleading, either through the wanton, unjustified use of physical force or by virtue of observing the misconduct and failing to attempt to intervene to prevent the harm.  *See* Compl. ¶¶ 26–34, 40–45, 47–49.

Likewise, at least for the purpose of a motion to dismiss, plaintiff has plausibly alleged that Nurse Reusser and/or Dr. D'Amico were present for, but failed to intervene to prevent, at least some of this harm from occurring.  *See id.* ¶¶ 47–50; *see also Crispin v. Roach*, 2020 WL

6263185, at *7 (D. Conn. Oct. 23, 2020) (concluding same with respect to nurse but expressing doubt about whether facility's medical staff possessed "authority to intervene in the use of force by a custody staff member").

However, the complaint fails to plausibly allege that Nurse Manor was involved in, or present for, any use of force. Instead, the pleading alleges that Nurse Manor failed to give him medical care after he was placed in the observation cell. Compl. ¶ 51. That allegation will be discussed in more detail in Part IV.D *infra*.

**B.   § 1983 Strip Search / Cavity Search Claim** (Counts Three and Four)

The phrase "strip search" is "often used as an umbrella term that applies to all inspections of naked individuals." *N.G. v. Connecticut*, 382 F.3d 225, 228 n.4 (2d Cir. 2004). Courts tend to use more technical terms to capture the exact type of a search: a "visual body cavity search" is a "visual inspection of a naked body, including genitals and anus, without any contact," *id*., while a "manual body cavity search" includes "some degree of touching or probing." *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (citation omitted). In the prison setting, these claims are covered by two constitutional provisions: the Fourth and Eighth Amendments. *See, e.g.*, *id*. at 57–65.

First, under the Fourth Amendment, a challenge to an isolated bodily search (as opposed to a prison's regulation or policy) implicates the framework set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), which requires the consideration of: (1) the scope of the intrusion; (2) the manner in which the search is conducted; (3) the justification for the search; and (4) the place in which it is conducted. *Harris*, 818 F.3d at 58.

Second, under the Eighth Amendment, a challenge to a bodily search is treated as either an excessive force claim or, in certain situations, a claim for sexual assault. *Harris*, 818 F.3d at 63 (evaluating a forcible "visual body cavity search" under Eighth Amendment rubric); *Hayes v.*

*Dahlke*, 976 F.3d 259, 274–75 (2d Cir. 2020) (explaining that "principal inquiry" is "whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate").

Measured against these related standards, plaintiff has plausibly alleged that Sergeant Fessette violated his Fourth and Eighth Amendment rights when he conducted a forcible cavity search of plaintiff's anus and genitals without an adequate justification and with the purpose of humiliating plaintiff. Compl. ¶¶ 48–49. Likewise, at least for a motion to dismiss, plaintiff has plausibly alleged that CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, Nurse Reusser, Dr. D'Amico, and CO Doe #1 were present for, but failed to intervene to prevent, this unjustified search. *Id*. ¶¶ 37, 46–49. However, as before, the pleading does not plausibly allege that Nurse Manor was involved in, or present for, this alleged conduct. *See* Compl. ¶ 51.

### C. § 1983 Conditions-of-Confinement Claim (Counts Three and Four)

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but the conditions of confinement must still be "humane," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, an inmate's "conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'" *Walker v. Schult*, 717 F.3d 119, 125 (quoting *Rhodes*, 452 U.S. at 347).

To state an Eighth Amendment claim based on conditions of confinement, the plaintiff must plausibly allege that: (1) objectively, the deprivation was "sufficiently serious that he was denied the minimal civilized measure of life's necessities," and (2) subjectively, the defendant official acted with "a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Walker*, 717 F.3d at 125 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. Thus, defendant-officials violate the law "when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *Id*. (citation omitted). "To meet the subjective element, the plaintiff must show that the defendant acted with 'more than mere negligence.'" *Id*. (quoting *Farmer*, 511 U.S. at 835). "To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health or safety." *Id*. (cleaned up).

Measured against this general legal standard, plaintiff has plausibly alleged that he was subjected to unconstitutional conditions of confinement. Plaintiff's complaint alleges that, after the cavity search occurred, he "was placed in a smock, and secured in an observation cell where he was left to suffer while bleeding, injured, and naked" under blindingly bright lights while he suffered from the "obvious trauma" to his head, face, and neck. Compl. ¶¶ 38, 50. Plaintiff was "overwhelmed with the smells of urine and feces for 24 hours of the day" and, despite "obvious" physical injuries, did not receive any medical treatment. *See id*. ¶¶ 50–51.

To be sure, conditions-of-confinement claims typically involve extreme conditions that are endured for a long period of time. Although it is unclear from plaintiff's pleading how long he suffered under observation, conditions that are "unsanitary" or that "prevent sleep" have each been held to be "objectively" sufficiently serious under certain circumstances, and in appropriate cases can be aggregated together to satisfy the first prong of the test. *See, e.g.*, *Walker*, 717 F.3d at 125–27. Likewise, "[e]vidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Id*. at 125 (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)).

Plaintiff's factual allegations, together with the reasonable inferences that can be taken from them, plausibly establish for the purpose of a pre-answer motion to dismiss that Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, Nurse Reusser, Dr. D'Amico, CO Doe #1, and Nurse Manor either participated in, or failed to intervene to prevent, unconstitutional conditions of confinement when they, *inter alia*, forced plaintiff into a mental health observation cell without justification and in unsanitary conditions for an unstated period of time where was unable to sleep, and, despite actively suffering "obvious" trauma from his injuries, which included having his dreadlocks "forcefully ripped" from his scalp, refused to give him necessary medical care.

### D.  § 1983 Deliberate Medical Indifference Claims (Counts Four and Five)

The Supreme Court has held that the Eighth Amendment forbids "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "That is true whether the deliberate indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison guards who intentionally deny or delay access to medical care or intentionally deny or delay access to the treatment once prescribed." *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019).

A deliberate indifference claim has two requirements. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). "The first requirement is objective: 'the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Spavone v. N.Y. State Dept' of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 476 F.3d 263, 279 (2d Cir. 2006)). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Id*.

An objectively "sufficiently serious" medical need is a "condition of urgency that may result in degeneration or extreme pain," "significantly affects daily activities," or that involves "chronic and substantial pain." *Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) (cleaned up). Although the condition does not need to be "life-threatening" or "at the limit of human ability to bear," it must be more than "uncomfortable and annoying." *Id*. (quoting *Brock v. Wright*, 315 F.3d 158, 1623 (2d Cir. 2003)). As the Second Circuit has explained, "[t]he question will be whether a plaintiff plausibly alleges a condition that produces severe and unmanaged pain." *Collymore v. Myers*, 74 F.4th 22, 30 (2d Cir. 2023).

To satisfy the subjective element, the plaintiff must show that the defendant acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To be "sufficiently culpable," the defendant-official has to know of, *and* disregard, "an excessive risk to inmate health or safety." *Clark v. Valletta*, 157 F.4th 201, 209 (2d Cir. 2025) (quoting *Farmer*, 511 U.S. at 837). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*.

Measured against this general standard, plaintiff has plausibly alleged that defendants were deliberately indifferent to his serious medical needs. Briefly stated, plaintiff alleges that Sergeant Fessette, CO Rock, and CO Nelson subjected him to a physical beating that left him with serious injuries for which they did not give him any medical treatment. Compl. ¶¶ 26–34. Next, defendants "escorted" plaintiff to the infirmary, where CO LaBombard and CO Doe #1 observed the "obvious trauma" to plaintiff's head, face, and neck, but refused to give him any medical treatment, either. *Id*. ¶¶ 36–39. During these events, CO Babbie, CO Coryer, Nurse Reusser, and Dr. D'Amico arrived. *Id*. ¶¶ 41, 47. Although plaintiff had "obvious" physical

trauma that was worsened by having his dreadlocks "forcefully ripped" from his scalp, none of these defendants took any action to help. *Id*. ¶¶ 41–46. Instead, these defendants stood by while Sergeant Fessette "forcibly" conducted an unjustified cavity search. *Id*. ¶¶ 47–50. Afterward, defendants put plaintiff in the observation cell, where he was seen by Nurse Manor, who failed to give him any medical treatment for his obvious injuries. *Id*. ¶ 51.

These allegations are more than enough to plausibly establish that Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, Nurse Reusser, Dr. D'Amico, CO Doe #1, and Nurse Manor were deliberately indifferent to plaintiff's serious medical needs.

### E.  § 1983 Religious Freedom / Free Exercise Claim (Count Eight)

The First Amendment guarantees the right to free exercise of one's religion. U.S. Const. amend. I. "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 F. App'x 52, 55 (2d Cir. 2015) (summary order) (collecting cases).

Measured against this general legal standard, plaintiff has plausibly alleged that, as a result of his sincerely held religious beliefs, he wears his hair in "dreadlocks," and "any cutting or removal of his dreadlocks would impinge on those beliefs." Compl. ¶¶ 45, 151. Plaintiff's complaint further alleges that CO Rock "forcefully ripped" plaintiff's dreadlocks from his scalp, causing him "to bleed and scream," and that Sergeant Fessette, CO Nelson, CO LaBombard, and CO Babbie did not intervene to prevent this constitutional violation but instead chose to stand by

and watch. *Id*. ¶ 44. CO Rock's alleged conduct is utterly devoid of any legitimate penological purpose. Accordingly, plaintiff has plausibly alleged this claim against these defendants.

## V.    CONCLUSION

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss (Dkt. No. 26) is GRANTED in part and DENIED in part;

2. Count One, Count Two, Count Six, Count Seven, Count Eight, Count Nine, Count Ten, any official-capacity § 1983 claims, and any state-law claims are DISMISSED;

3. Defendants DOCCS, OMH, Clinton Correctional Facility, Acting Commissioner Annucci, Commissioner Sullivan, Superintendent McIntosh, Deputy Superintendent Bradford, CO Holland, and Does #2–#5 are DISMISSED;

4. The following causes of action REMAIN for discovery:

- § 1983 Excessive Force / Failure-to-Intervene Claims (in Counts Three and Four) against Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, CO Doe #1, Nurse Reusser, and Dr. D'Amico;

- § 1983 Strip Search / Cavity Search Claim (in Counts Three and Four) against Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, CO Doe #1, Nurse Reusser, and Dr. D'Amico;

- § 1983 Conditions-of-Confinement Claim (in Counts Three and Four) against Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, CO Doe #1, Nurse Reusser, Dr. D'Amico, and Nurse Manor;

- § 1983 Deliberate Medical Indifference Claims (in Counts Four and Five) against Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, CO Babbie, CO Coryer, CO Doe #1, Nurse Reusser, Dr. D'Amico, and Nurse Manor; and

- § 1983 Religious Freedom / Free Exercise Claim (in Count Eight) against Sergeant Fessette, CO Rock, CO Nelson, CO LaBombard, and CO Babbie.

The Clerk of the Court is directed to terminate the pending motion and set an answer deadline accordingly.

IT IS SO ORDERED.

Dated: December 8, 2025
Utica, New York

Anthony J. Brindisi
U.S. District Judge